**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CINETIC DYAG CORPORATION,

                    Plaintiff,                  Civil Case No. 2:08-cv-11790

vs.

FORTE AUTOMATION SYSTEMS, INC.,        PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

                    Defendant.
_____ /

**OPINION AND ORDER: (1) DENYING DEFENDANT'S MOTION TO DISMISS,
(2) GRANTING DEFENDANT'S MOTION TO TRANSFER, AND
(3) TRANSFERRING THIS ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

Now before the Court is Defendant Forte Automation Systems, Inc.'s ("Defendant's") July 17, 2008 Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406, and 28 U.S.C. § 1404. (Dkt. No. 4). A hearing on this issue was held on October 2, 2008. Having considered the entire record, and for the reasons that follow, the Court DENIES Defendant's Motion to Dismiss pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406, GRANTS Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404,[1] and TRANSFERS this action to the United States

---

[1] Defendant incorrectly brought a Motion to Dismiss pursuant to 28 U.S.C. § 1404. Defendant should have brought a Motion to Transfer pursuant to 28 U.S.C. § 1404. Under Rule 7(b)(1), a motion must state "with particularity" the grounds on which it is made and the relief or order sought. FED. R. CIV. P. 7(b)(1)(B). Because Defendant correctly cites the statute in its motion and because Plaintiff has not objected to Defendant's motion as improper, the Court considers Defendant's Motion to Dismiss pursuant to 28 U.S.C. § 1404 as a Motion to Transfer pursuant to 28 U.S.C. § 1404. This conclusion is further supported by case law holding that a district court has the power to order transfer under 28 U.S.C. § 1404 *sua sponte*. *Carver v. Knox County*, 887 F.2d 1287, 1291 (6th Cir. 1989).

1

District Court for the Northern District of Illinois, Western Division.

I.  **BACKGROUND**

This action arises from Plaintiff Cinetic Dyag Corporation's ("Plaintiff's") allegations that Defendant breached a series of three contracts between the parties through its failure to pay amounts due under those contracts.

Plaintiff is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. (Compl. ¶ 2). Defendant is an Illinois corporation engaged in, *inter alia*, the manufacturing of speciality machines. (*Id.* ¶ 3). Its principal place of business is in Rockford, Illinois. (*Id.*).

Beginning around December 2006, Defendant contracted with Plaintiff to provide controls engineering services to Defendant for three different projects: (1) the Caterpillar Project, (2) the Osram/Sylvania Project, and (3) the Anheuser-Busch Project. (*Id.* ¶ 6). Plaintiff issued its first quotation to Defendant for the Osram/Sylvania Project on November 1, 2006 ("Osrman/Sylvania Project Quotation"). (Pl.'s Resp. Ex. 1.A). Then, on December December 6, 2006, Plaintiff issued a quotation for the Caterpillar Project ("Caterpillar Project Quotation"). (Pl.'s Resp. Ex. 1.B). On March 15, 2007, Plaintiff issued a quotation for the Anheuser-Busch Project ("Anheuser-Busch Project Quotation"). (Pl.'s Resp. Ex. 1.C).

Plaintiff's quotations each contain a clause in the upper right-hand corner of the page, which states: "Purchase Orders are subject to [Plaintiff's] Standard Terms and Conditions." (Pl.'s Resp. Ex. 1.A-C). Under the heading "Governing Law," Plaintiff's Standard Terms and Conditions contain a choice of law provision, which provides in relevant part: "The rights and obligations of the parties shall be governed by the laws of the State of Michigan excluding any conflicts of law

provisions." (Pl.'s Resp. Ex. 1.A–C).

Subsequently, Defendant issued Purchase Orders for all three projects—the "Caterpillar Project dated December 15, 2006; the Osram/Syvania Project dated February 26, 2007; and the Anheuser-Busch Project dated April 2, 2007. (Def.'s Br. Ex. C–E). These purchase orders each contain a clause in the middle of page, separated from the rest of the information by two bold lines, which states: "***[Defendant's] Standard Terms Of Purchase accompany this order and are an inseperable part of this purchase order.***" (*Id.*). Included in Defendant's five-page "Standard Terms Of Purchase" is a provision entitled "CHOICE OF LAW," which provides:

> This Agreement shall be governed by and construed in accordance with, the internal laws of the State of Illinois without regard to its principles of conflicts of laws. The parties hereby irrevocably consent to the exclusive personal jurisdiction of the federal court located in Illinois or, if such court lacks subject matter jurisdiction, to the jurisdiction of the applicable state court of the State of Illinois in Winnebago County, for all purposes in connection with this Agreement.

(*Id.*).

According to Plaintiff, "[t]he parties' contract was effectively on a 'time and materials' basis in which [Defendant] agreed to pay [Plaintiff] an agreed upon amount per hour work performed based on an estimate of the number of hours that would be required to perform the controls engineering services, along with reimbursing [Plaintiff] for its travel expenses and other out-of-pocket costs with the work." (Pl.'s Compl. ¶ 7).

On July 12, 2007, Defendant filed a complaint in Illinois state court in Winnebago County, alleging that the services rendered by Plaintiff on the Caterpillar Project and the Osram/Sylvania Project were defective and that Plaintiff had falsified its time records on the Caterpillar Project. (Def.'s Br. Ex. F). Plaintiff answered the complaint on September 6, 2007. (Def.'s Br. Ex. L).

After Plaintiff filed its answer, the parties actively engaged in negotiating a settlement for

3

the Osram/Sylvania Project and the Anheuser Busch Project. (Def.'s Br. 3). On July 28, 2007, the parties executed a "Payment Agreement and Mutual Release of Claims," ("Settlement Agreement") whereby Defendant agreed to pay Plaintiff certain amounts regarding the Osram/Sylvania Project and the Anheuser Bush Project. (Def.'s Br. Ex. G). The Caterpillar Project was not subject to the Settlement Agreement. (*Id.*).

Under the Settlement Agreement, Defendant was required to pay Plaintiff an initial sum of $21,800.00. (*Id.*). In addition, the parties agreed to negotiate a remaining sum ("Agreed Remaining Balance") that was to be paid to Plaintiff. Once this amount was paid, the parties were to release each other from any and all claims arising out of the Osram/Sylvania or the Anheuser-Busch Projects. (*Id.*). But if the parties were not able to agree upon the Agreed Remaining Balance, then Defendant was to pay Plaintiff $43,600.00. (*Id.*). Under this subsequent scheme, however, both parties reserved the right to pursue any and all claims against one another.

After failing to successfully negotiate the Agreed Remaining Balance, Defendant paid Plaintiff the initial $21,800.00 and the residual $43,600.00 due under the Settlement Agreement. (*Id.*). As specifically authorized under the Settlement Agreement, Defendant exercised its right to pursue its claims against Plaintiff and on June 25, 2008, it filed a first amended complaint in Illinois state court.

In the meantime, Plaintiff filed the instant action on April 29, 2008, alleging that Defendant has failed to pay Plaintiff $123,816.01 owed to it for services rendered for the Caterpillar, Osram/Sylvani, and Anheuser-Busch Projects.

## II. ANALYSIS

### A. Forum Selection Clause as Part of the Agreement

Defendant argues that the Court should dismiss Plaintiff's Complaint under Rule12(b)(3), 28 U.S.C. § 1404, or 28 U.S.C. § 1406 due to the forum selection clause contained in Defendant's standard terms and conditions that allegedly mandates that any dispute between the parties be filed in Illinois. Plaintiff, however, argues in response that the forum selection clause was not part of the contract between the parties because Defendant's Standard Terms Of Purchase were not incorporated as part of the agreement. Therefore, before reaching the validity and effect of the forum selection clause, the Court first determines whether the contract between the parties included the forum selection clause.

In addition to containing the forum selection clause, Defendant's standard terms and conditions also included a choice of law provision. That provision provides: "This Agreement shall be governed by and construed in accordance with, the internal laws of the State of Illinois without regard to its principles of conflicts of laws." (Def.'s Br. Ex. C). Plaintiff's purchase orders also referenced a set of "Terms & Conditions" ("Terms and Conditions"). (Def.'s Br. Ex. A). While these Terms and Conditions do not contain a forum selection clause, they do contain a choice of law provision. (*Id.*). That provision provides: "The rights and obligations of the parties shall be governed by the laws of the State of Michigan excluding any conflicts of law provisions." (*Id.*).

Thus, another complication arises: two different forms referencing two different standard terms and conditions with two different choice of law provisions. The question then becomes which state's law governs the issue of whether the forum-selection clause—as set forth in Defendant's Standard Terms Of Purchase—became part of the contracts between the parties.

5

Generally, "federal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Such an application here, however, presents a complication not only because Defendant is challenging whether this Court is in fact the proper forum, but also because both parties' forms contain choice of law provisions. Fortunately though, the law of the states listed in both party's standard terms and conditions and those with the most significant contacts to this transaction—Illinois and Michigan—is substantially the same with respect to the contractual issues presented in this case. Accordingly, a choice of law analysis is unnecessary.

### 1. Incorporation of Standard Terms and Conditions

Under either state's law, the initial question is whether the standard terms and conditions of each party was incorporated into the alleged contract. As elucidated by Plaintiff, it is undisputed that Plaintiff made an offer on each project to Defendant through its quotations. It is also undisputed that Defendant accepted Plaintiff's offer on each project by issuing separate purchase orders, thereby creating a contract for each project. It is, however, disputed whether Defendant's purchase orders included its Standard Terms Of Purchase.

A written contract may include additional terms from other writings provided that the parties intended for the terms to be binding on the parties. *See Forge v. Smith*, 458 Mich. 198, 207–08 (1998); *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 736 (E.D. Ill. 2002) (citing *Wilson v. Wilson*, 217 Ill. App. 3d 844, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991)). Moreover, "[w]here additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them." *Construction Fasteners, Inc. v. Digital*

*Equipment Co.*, 1996 Mich. App. LEXIS 736, at *2 (Mich. Ct. App. Oct. 22, 1996) (citing Ginsberg v Myers, 215 Mich 148, 150-151 (1921)); *see also 188 LLC*, 300 F.3d at 737 ("When the contract incorporates a specific document by name, both parties are on notice and are bound by the terms of that document.") (applying Illinois law).

In the present case, Plaintiff claims that it did not receive copies of Defendant's Standard Terms Of Purchase until only after Defendant served Plaintiff with the lawsuit filed in Illinois state court. Even if Plaintiff's claims are true, Defendant's Standard Terms Of Purchase were incorporated into its acceptance of Plaintiff's offer because Defendant's purchase orders clearly state in bold conspicuous type: "*** *[Defendant's] Standard Terms Of Purchase accompany this order and are an inseparable part of this purchase order.* ***" (Def.'s Br. Ex. C–E) (emphasis in the original). The above-quoted language clearly and unambiguously evinced an intent to incorporate Defendant's Standard Terms Of Purchase into the purchase orders. As a result, Plaintiff was put on notice of Defendant's Standard Terms Of Purchase and cannot now complain that they were not incorporated into the purchase orders.

### 2. Effect of Applicability of the UCC

The next issues that need to be resolved are (1) whether the alleged contract between the parties is for the sale of goods or of services and (2) the effect of that determination. In its Response, Plaintiff assumes—without any analysis—that the contract was for the sale of goods and thus applied the statutory provisions of the Michigan Uniform Commercial Code. Defendant, on the other hand, contends that the contract did not contemplate the sale of goods, and instead was a contract for engineering services.

It is undisputed that the Defendant's purchase order constituted a definite and seasonable

7

expression of acceptance. As analyzed above, Michigan and Illinois law both lead to a finding that the Plaintiff's Terms and Conditions were incorporated into its offer and Defendant's Standard Terms Of Purchase were incorporated into its acceptance. Because Defendant's Standard Terms Of Purchase include additional terms, namely the forum selection clause, it is unclear whether those additional terms become part of the agreement between the parties. The applicability of the Uniform Commercial Code ("UCC"), which both Michigan and Illinois have adopted—to this issue is critically important as it completely changes the outcome of whether the forum selection clause is part of the contract.

For instance, if the Court determines that the UCC is applicable, then the so called "battle of the forms" provision—UCC 2-207—is implicated. UCC 2-207 provides in pertinent part:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they *materially alter it*; or
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

U.C.C. § 2-207 (1977) (emphasis added). Under UCC 2-207, the forum selection clause—as an additional term—becomes part of the contract unless one of the exceptions listed under section (2) is applicable. Plaintiff argues that the forum selection clause is not part of the contract because it materially alters the contract.

In *Metropolitan Alloys Corp v. State Metals Industries, Inc.*, the district court analyzed at length whether a forum selection clause materially alters a contract under M.C.L. §

440.2207(2)(b)—Michigan's equivalent to UCC 2-207—and found that it does. 416 F. Supp. 2d 561, 566 (E.D. Mich. 2006). The court first noted that "[n]either the Michigan Supreme Court nor the Michigan Court of Appeals have decided the precise issue of [whether] adding a forum selection clause constitutes a material alteration of a UCC sales contract for the purposes of M.C.L. § 440.2207(2)(b)." *Id*. It then noted that "[c]onsistent with a policy that the UCC be construed 'to make uniform the law among various jurisdictions,' Michigan courts have found it appropriate to seek guidance from the decision of other jurisdictions in addressing materiality issues arising under M.C.L. § 440.2207(2)(b)." *Id*. As such, it looked to a leading authority on contracts, which provided that "'clauses which have been deemed to materially alter a contract include a choice of forum clause.'" *Id*. (citing 2 Williston on Contracts, § 6:22, at 6 (4th ed.) (Dec. 2005 update)). In addition, it referenced several cases from other jurisdictions and found no decisions holding to the contrary. *Id*.

Accordingly, if the UCC is applicable here, then the forum selection clause is not part of the contract between the parties because under UCC 2-207(b)(2), it materially alters the contract.

On the other hand, if the UCC is not applicable here, then the common law of Michigan and Illinois apply. Under the basic contract law of Michigan and Illinois, when a party responds to an offer with additional terms or terms different than those proposed in the offer, no acceptance occurs; instead, the response constitutes a counteroffer, which requires acceptance by the original offeror before a valid contract is formed. *See Zurcher v. Herveat*, 238 Mich. App. 267, 296 (1999); *Loeb v. Gray*, 131 Ill. App. 3d 793, 799-800, 475 N.E.2d 1342, 1347 (1985).

In this case, Defendant responded to Plaintiff's offer with additional terms—the forum selection clause in the Standard Terms Of Purchase. As a result, instead of acting as an acceptance,

9

Defendant's response constituted a counter-offer. When Plaintiff commenced the control engineering services for Defendant, it accepted the terms of Defendant's counter-offer. The invoices that Plaintiff sent to Defendant are evidence of this acceptance. (Def's Br. Ex. B). Therefore, if UCC is inapplicable here, then the contract between the parties is governed by the forum selection clause listed in Defendant's Standard Terms Of Purchase.

### 3. Applicability of the UCC

The final preliminary matter that needs to be resolved is whether the UCC governs the transactions at issue. As noted above, the determination of this issue wholly impacts the Court's resolution of the case.

The UCC only applies to the sales of "goods," which are defined as "all things . . . which are movable at the time of identification to the contract for sale other than money in which the price is to be paid." U.C.C. § 2-105 (adopted in Michigan as MCL § 440.2105 and in Illinois as § 810 ILCS 5/2-105). The courts in Michigan and Illinois both apply the "predominant factor test" in determining whether a transaction primarily involves a sale of goods or of services. *See Neibarger v. Universal Corp., Inc.*, 439 Mich. 512, 536 (1992); *Tivoli Enters. v. Brunswick Bowling & Billiards Corp.*, 269 Ill. App. 3d 638, 646; 646 N.E.2d 943, 947-948 (1995). Courts consider several factors including (1) the language of the parties' agreements, (2) the circumstances surrounding their execution, and (3) the allocation between costs of materials and services and the relative costs of goods to the total contract price. *Allmand Assocs. v. Hercules, Inc.*, 960 F.Supp. 1216, 1223 (E.D. Mich. 1997) (citations omitted). According to the Michigan Supreme Court in *Neibarger*,

> If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required.

> Conversely, if purchaser's ultimate goal is to procure a service, the contract is not governed by the U.C.C., even though goods are incidentally required in the provision of the service.

*Neibarger*, 439 Mich. 512, 536 (1992). The determination of whether goods or services predominate in a contract is one of fact. *Higgins v. Lauritzen*, 209 Mich. App. 266, 269 (1995). But "when there is no genuine issue of material fact in dispute regarding the provisions of the contract, a court may decide the issue as a matter of law." *Id.* at 270.

At the motion hearing, Plaintiff clarified its reasons for applying the UCC in its Response to the contracts at issue. Plaintiff contended that the contracts contemplate the sale of a good—software—which was evidenced by the software documentation deliverables in the Caterpillar Project Quotation. That is, the summary sheet of Caterpillar Project Quotation contains the heading "Software Documentation Deliverable" and states that "Electronic media for software shall be furnished on a CD-Rom. Hard copies of Software printouts shall not be provided." (Pl.'s Resp. Ex. 1.C). In addition, the Caterpillar Project Quotation and the corresponding purchase order from Defendant both list a separate line item for "Controls Software Engineering" with a total price of $13,424.50. (Pl.'s Resp. Ex. 1.C; Def.'s Br. Ex. B.). Under this line item, it provides:

> -One (1) lot PLC programming required to complete project per line-up and electrical drawings
> -One (1) lot HMI screens and messaging required to complete project per line-up and electrical drawings.

(Pl.'s Resp. Ex. 1.C).

In support of its position, Plaintiff cites *Dahlmann v. Sulcus Hospitality Techs. Corp.*, which held that a reservation system developed for two hotel properties constituted a good under the UCC because the plaintiffs were attempting to acquire a "good." 63 F. Supp. 2d 772 (E.D. Mich. 1999) (interpreting Michigan law). While several courts have found that software constitutes a "good" and

is, therefore, governed by the UCC, *see, e.g.*, *id.*; *Mirco Data Base Sys. v. Dharma Sys. Inc.*, 148 F.3d 649, 654-55 (7th Cir. 1998) (determining that the UCC applied to the sale of preexisting software with custom modifications where the final purchase price was allocated between an up-front software licensing fee coupled with fees for modifications), several more recent opinions have found that certain software development agreements contemplate the sale of services. *See, e.g.*, *Pearl Investments, LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 353 (D. Me. 2003) (finding that the UCC did not apply to software created from scratch—concept to realization—by a developer, which was paid on a time and materials basis); *Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 U.S. Dist. LEXIS 8483, at *10–18 (N.D. Cal. Jan. 26, 2007) (holding that the development of new software from scratch to supplement the plaintiff's existing software and the subsequent grant of a licence for the software was not governed by the UCC).

Here, the Court finds as a matter of law that the alleged contract between the parties contemplates the provision of services, and as a result, the UCC is not applicable. Regardless of how the purchase price initially was allocated in the Caterpillar Project Quotation, Plaintiff and Defendant treated the contracts for all three projects as involving services.

First, and most importantly, in its Complaint, Plaintiff is the party that alleges that it provided "controls engineering *services* to Defendant." (Pl.'s Comp. ¶ 1) (emphasis added). Throughout its Complaint, it refers to its relationship with Defendant as one involving services, a total of *eight times*. (*Id.* ¶¶ 1, 6, 7, 8, 11, 12). Plaintiff states that the "contract was effectively on a 'time and materials' basis in which [Plaintiff] agreed to pay [Defendant] an agreed upon amount per hour for work performed based on an estimate of the number of hours that would be required to perform the controls engineering services." (*Id.* ¶ 7). In its claim for relief, Plaintiff plainly

admits that "Defendant . . . has accepted services provided by Plaintiff . . . , but has failed to pay for those services." (*Id.* ¶ 12). Plaintiff cannot now attempt to alter its explanation of the essence of the contracts at issue merely because its previous interpretation resulted in an incompatible legal conclusion.

Additionally, the various correspondence sent between the parties indicate that the alleged contract was primarily for services. First, all of the prices contained in Plaintiff's invoices were calculated based upon the number of hours of engineering services provided to Defendant. (Def.'s Br. Ex. B). Second, the quotations issued by Plaintiff state that "[p]rices are valid for *work performed* from December 1st, 2006 through November 30th, 2007." (Def.'s Br. Ex. A).

Finally, according to the Caterpillar Project Quotation, Defendant was "to provide software engineering *using* Allen Bradley RSLogix development, HMI screens and messaging *using* Allen Bradley RSStudio development software, *startup, debug and production support* for the Robotic Weld Cell." (Pl.'s Resp. Ex. 1.C) (emphasis added). This indicates that Plaintiff provided the "Software Documentation Deliverables" by utilizing *existing* software programs, not developing wholly new software and then providing that software to Defendant, as it would if it was selling a good to Defendant.

Because the contracts between the parties contemplated the sale of services and not goods, the UCC is not applicable.

### B. Validity and Enforcement of Forum Selection Clause

Having concluded that the forum selection clause is part of the contracts between the parties, the remaining questions involve the validity and effect of the forum selection clause. Defendant contends that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3), 28 U.S.C. §
13

1404, and 28 U.S.C. § 1406 because the forum selection clause required Plaintiff to file its Complaint in a court located in Illinois.

Rule 12(b)(3) authorizes a party to move to dismiss a case on the grounds that it has been filed in an improper venue. It is "the procedural vehicle by which to challenge venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. [Instead,] [t]he requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002). "[Section] 1406(a)[2] provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a)[3] operates on the premises that the plaintiff has properly exercised his venue privilege." *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964)).

### 1. Validity of the Forum Selection Clause

Parties to a contract may designate a forum in which any litigation arising out of the contract must take place. The law governing the validity and effect of the forum selection clause depends on the nature of the underlying case and the context in which it is asserted. *See Preferred Capital, Inc v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 307 (6th Cir. 2007). In diversity cases, the Sixth Circuit has held that at least where the forum selection clause confers personal jurisdiction, state law controls the interpretation of that forum selection clause. *Id.* at 308. If the issue, however, is raised

---

[2] 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought."

[3] 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."

14

on a motion to transfer under 28 U.S.C. § 1404, then federal standards apply because such transfers are within the discretion of federal district court judges. *See Stewart Org., Inc v. Ricoh*, 487 U.S. 22, 28 (1988). Several courts have even found that if the contract containing the forum selection clause also contains a choice of law provision, then the forum selection clause is construed under the law specified in the choice of law provision. *See, e.g.*, *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007).

In this case, the distinctions are essentially irrelevant for the Court's purposes as federal, Michigan, and Illinois law all favor the enforcement of forum selection clauses and consider such clauses as presumptively valid. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Turcheck v. Amerifund Financial, Inc.*, 272 Mich. App. 341, 345–46 (2006) (citing M.C.L. § 600.745(3))[4]; *IFC Credit Corp v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 85-86, 881 N.E.2d 382 (2007). Under the *Bremem* standard, courts should specifically enforce forum selection clauses unless the party opposing enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid due to fraud or overreaching." *Bremen*, 407 U.S. at 15.

---

[4] Mich. Comp. Laws § 600.745(3) provides:
    (3) If the parties agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court shall dismiss or stay the action, as appropriate, unless any of the following occur:
    (a) The court is required by statute to entertain the action.
    (b) The plaintiff cannot secure effective relief in the other state for reasons other than delay in bringing the action.
    (c) The other state would be a substantially less convenient place for the trial of the action than this state.
    (d) The agreement as to the place of the action is obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
    (e) It would for some other reason be unfair or unreasonable to enforce the agreement.
M.C.L. § 600.745 (2008).

The presumptive validity of a forum clause can be overcome if the opposing party can show either that (1) trial in the contractual forum would be gravely difficult and inconvenient that the party will for all practical purposes be deprived of its day in court or (2) enforcement would contravene a strong public policy of the forum state. *Id*. at 18, 15 (quotations omitted).

Plaintiff, as the opposing party, bears the burden of overcoming the presumption that the forum selection clause is invalid. Plaintiff's only arguments against the validity of the forum selection clause is that the clause is not part of the contract between the parties or, in the alternative, that Defendant waived enforcement of the clause when it filed its initial claim in Illinois state court, instead of federal court. As addressed at length above, the Court should conclude that the forum selection clause was part of the contracts between the parties.

With regard to Plaintiff's waiver argument, the Court should find that this argument is without merit. Plaintiff argues that Defendant violated the terms of its own forum selection clause by filing its case in state court instead of federal court in Illinois as required by the clause. The forum selection clause, however, plainly provides that if the federal court in Illinois lacks subject matter jurisdiction, then the party may file its claim in state court. As Plaintiff acknowledges only three pages earlier in the same brief, the federal court in Illinois lacked subject matter jurisdiction over Defendant's claim. (Pl.'s Resp. 4) ("[I]n [Defendant's] Illinois Complaint, [Defendant] only alleges that it has damages in excess of $50,000, not the $75,000 required for a federal district court to exercise diversity jurisdiction).

### 2. Enforcement of the Forum Selection Clause

Defendant seeks dismissal of Plaintiff's claim pursuant to Rule 12(b)(3), 28 U.S.C. § 1404, and 28 U.S.C. § 1406. While a number of courts hold that a forum-selection clause is ground for

16

a Rule 12(b)(3) motion to dismiss for improper venue, *see, e.g.*, *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006) ("A challenge to venue based upon a forum selection clause can appropriately be brought as a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3)), the Sixth Circuit holds that a 28 U.S.C. § 1404 convenience transfer is the primary vehicle to enforce a forum selection clause when venue is challenged.[5] *See Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002) (holding that in the case of an action removed from state court to federal court under 28 U.S.C. § 1441, "the parties' contractual designation of forum can[not] render the venue dictated by the statute 'improper'").

Here, Defendant has challenged venue based upon the forum selection clause. Defendant has not challenged venue based upon 28 U.S.C. § 1391 or otherwise argued that notwithstanding the forum selection clause, venue would not be proper in this Court. As such, venue is proper. Therefore, in following *Kerobo*, the only means of enforcing the forum selection clause at issue here is through 28 U.S.C. § 1404.

In *Moses v. Business Card Express, Inc.*, the Sixth Circuit summarized the standards set forth by the U.S. Supreme Court in *Ricoh* for district courts to consider when making a determination on whether to grant a motion to transfer venue based upon a forum selection clause:

> When a district court is considering a motion to transfer based upon a forum selection clause, the clause should receive neither dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1404(a). The Supreme Court pointed out that in addition to the forum selection clause, which should figure centrally in the District Court's calculus, the lower court should consider a number of other case-specific

---

[5] The Sixth Circuit also allows a parties to enforce a forum selection clause through a motion to dismiss under Rule 12(b)(6). *See Security Watch Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371, 375–76 (affirming the district court's dismissal under an unspecified subsection of Rule 12(b) in enforcing a forum selection clause); *Langley v. Prudential Mortgage Capital Co.*, No. 08-5032, slip op. at 4 (6th Cir. October 27, 2008) (implying that a forum selection clause only can be enforced either through a motion to transfer venue under 28 U.S.C. §1404(a) or a motion to dismiss under Rule 12(b)(6) for failure to state a claim).

> factors... Therefore, in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public concerns, such as systemtic integrity and fairness which come under the rubric of 'interests of justice.'

929 F.2d 1131, 1136–37 (citations omitted).

Applying the foregoing standards, the Court grants Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and transfers the case to United States District Court for the Northern District of Illinois, Western Division, which is located in Winnebago County, Illinois.

The forum selection clause, which was incorporated into the contracts through Defendant's Standard Terms Of Purchase, clearly states that the parties irrevocably consent to the exclusive personal jurisdiction of either the federal or state courts in Illinois. While there is some dispute as to when Defendant's Standard Terms Of Purchase were first shared with Plaintiff, they were clearly and unambiguously referenced by Defendant's purchase orders. Plaintiff cannot now claim that the forum selection clause was not part of its contracts with Defendant simply because it did not seek out a copy of the Standard Terms Of Purchase, especially when its own quotations incorporated by reference an applicable Terms and Conditions.

In addition, the other case-specific factors summarized in *Moses* weigh in favor of Defendant. First, the convenience/inconvenience factor weighs in favor of Defendant because there currently is ongoing litigation regarding the same issues and facts in Illinois state court in Winnebago County—the location of the Western Division of the U.S. District Court for the Northern District of Illinois. Even though Plaintiff will have to travel to Illinois for both the federal and state court proceedings, adjudicating both disputes in the same county gives the parties the opportunity to schedule activities relating to the proceedings more efficiently.

18

Adjudicating the federal and state proceedings in the same county also touches the "interest of justice" concerns, which also tip in favor of Defendant. As indicated above, Defendant sued Plaintiff in Illinois state court in Winnebago County on July 12, 2007, regarding the exact same contractual dispute involved in the present action. In those proceedings, Plaintiff never contested the enforceability of the forum selection clause—or even, more generally, the validity of the incorporation of Plaintiff's Standard Terms Of Purchase. (*See* Def.'s Br. Ex. L). Instead of filing a counterclaim against Defendant in Illinois state court, Plaintiff filed a wholly separate action in federal court in Michigan. If Plaintiff felt disadvantaged or prejudiced by having to adjudicate its claims in Illinois state court, then Plaintiff should have sought removal of the proceeding to federal court in Illinois—the same venue clearly provided for in the forum selection clause.

Plaintiff claims that it filed the instant action in this Court because the Illinois state court action was essentially stalled. But an order issued by the judge in the Illinois state court action on June 25, 2008 shows that Plaintiff did not object to Defendant's Motion for Leave to File an Amended Complaint in those proceedings. If Plaintiff had issues with the venue or pace of the Illinois state court proceedings, then Plaintiff should have raised an objection then.

Finally, Plaintiff's Standard Terms and Conditions are completely silent on the issue of the forum selection clause. (Def.'s Br. Ex. A & B). Thus, while Defendant has expressed its intent to limit suit to Illinois, Plaintiff has not expressed any preference regarding the location of suit. Put differently, Plaintiff selected its forum—that being federal or state court in Illinois—when it assented to the three contracts at issue here.

Accordingly, the Court finds that this action should be transferred to the United States District Court for the Northern District of Illinois, Western Division.

## III. CONCLUSION

For all these reasons, the Court Court DENIES Defendant's Motion to Dismiss pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406 (Dkt. No. 4) , GRANTS Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404, (Dkt. No. 4), and TRANSFERS this action to the United States District Court for the Northern District of Illinois, Western Division.

**SO ORDERED.**

                                         s/Paul D. Borman
                                         PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

Dated: November 6, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 6, 2008.

                                         s/Denise Goodine
                                         Case Manager